UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| NICHOLAS A. CALL, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:23-cv-33 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| MATTHEW R. MELVIN, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**ENTRY AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 29)**

Currently before the Court is Defendants' Motion for Summary Judgment (the "Motion") (Doc. No. 29), submitted by Defendants Matthew Melvin, in his official capacity as Sheriff for Champaign County, Ohio ("Sheriff Melvin"), and Champaign County Sheriff's Deputy Josh Thomas, in both his personal and official capacity ("Deputy Thomas") (collectively, "Defendants"). Plaintiff Nicholas Call ("Call") brought the instant Complaint (Doc. No. 1) alleging that, by way of his interaction with Deputy Thomas on August 17, 2022, Defendants are liable pursuant to 42 U.S.C. § 1983 and Ohio state law for depriving Call of his constitutional rights. Under federal law, Call has alleged claims against Defendants for excessive force, malicious prosecution, and municipal liability. (Doc. No. 1 at PageID 11.) Under Ohio law, Call has alleged Deputy Thomas' liability for malicious prosecution and false arrest. (*Id.* at PageID 11-12.) Defendants argue that Deputy Thomas is entitled to federal qualified immunity as well as statutory immunity, and, therefore, Defendants are entitled to summary judgment on all of Call's claims. (Doc. No. 29 at PageID 619-20.) In response, Call only argues for the survival of a federal

1

false arrest claim not pled in the Complaint and his claim for malicious prosecution under federal law. (*See* Doc. No. 34.) Call does not address Defendants' attack on his federal claims for excessive force and municipal liability, or his state law claims for false arrest and malicious prosecution.

For the reasons discussed below, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. No. 29).

## I.     BACKGROUND[1]

The events of this case began with an emergency call made to Champaign Countywide Communication Center ("Dispatch") in the early morning hours of August 17, 2022, regarding Call's fifteen-year-old son, J.C.[2]  (*See* Doc. No. 27-2.)  At the time, J.C. was living with his father, Call, in Champaign County, Ohio.  (Doc. No. 17 at PageID 119-20.)  A little after midnight on August 17, 2022, J.C. told his friend, during a phone conversation, that he intended to use a knife to commit some form of self-harm. (Doc. No. 27-2 at PageID 467.)  The friend promptly called Dispatch to report J.C.'s threats and request that authorities go to J.C.'s home to ensure his safety. (*Id.*)  Over the course of about 12-15 minutes, J.C.'s friend continued to update Dispatch. (*Id.* at PageID 467-68.)  Notably, as the situation developed, the friend stressed urgency, advising Dispatch that there were guns in the home, that J.C. would not submit to authorities without a fight, and that J.C. was imminently about to commit self-harm. (*Id.* at PageID 468.)  Dispatch relayed this information to the Champaign County Sheriff's Department in real time. (*Id.* at PageID 465, 467-68.)

---

[1] The Court refers directly to the Defendants' exhibits by name where such exhibits have been manually filed.  On September 19, 2024, the Office of the Clerk of Court noticed its receipt of Defendants' manually filed exhibits on CM/ECF.
[2] J.C. has since reached the age of majority.  The Court continues to refer to J.C. by his initials in this Order in light of his minority status when the events at issue occurred.

2

On the night in question, there were just two Champaign County Sheriff's Deputies on duty: Deputy Thomas and Deputy Brandon Fenwick ("Deputy Fenwick") (collectively, "Deputies"). (Doc. No. 19 at PageID 278.) There was no department supervisor on duty. (*Id.*) Both Deputies responded to Dispatch's call regarding J.C., initially following non-emergency procedures. (Doc. No. 21 at PageID 344.) As Dispatch informed the Deputies that J.C. was escalating his threats of self-harm, the Deputies adapted to an emergency response, using police lights and sirens. (*Id.*)

Deputy Thomas was the first of the two Deputies to reach Call's home, at around 12:37 AM. (*Id.* at PageID 346; *see also* Defs. Ex. A, Video, at 0:00.) When Deputy Thomas arrived, he stepped onto Call's small wooden porch, which connected to the front door of the home. (Defs. Ex. A, Video, 0:00-0:04.) Deputy Thomas knocked on the front door twice, announcing himself as law enforcement each time. (*Id.* at 0:10-0:42.) Call, who was in bed when Deputy Thomas arrived, was not immediately woken by Deputy Thomas' knocks or announcements. (Doc. No. 17 at PageID 129.) Instead, Call was alerted to the presence of someone at his door by his dogs. (*Id.*) About one minute after Deputy Thomas had gotten to Call's house, Call came from his bedroom, checked his security cameras to see a sheriff's deputy on his doorstep, and went to the front door to greet Deputy Thomas. (Doc. No. 17 at PageID 127-28; Defs. Ex. A, Video, at 0:52-0:58.)

Call cracked open his door enough for his thin frame to fit in the threshold. (Doc. No. 17 at PageID 129; Defs. Ex. A, Video, at 0:58-1:01.) As Call opened the front door, J.C. emerged from his bedroom, just behind Call where he stood in the doorway. (Defs. Ex. A, Video, at 0:58-1:01.) Deputy Thomas testified that, while its possible he saw someone appearing behind Call, he could not determine the individual was J.C. (Doc. No. 19 at PageID 301.) Deputy Thomas identified himself to Call and asked if J.C. was home. (Doc. No. 17 at PageID 130.)

3

When Call told Deputy Thomas that J.C. was there, Deputy Thomas said that he needed to speak with the boy and attempted to enter Call's home. (*Id.*) It is disputed whether Deputy Thomas told Call why he needed to speak with J.C. or whether Deputy Thomas asked to be let in. (*Compare* Doc. Nos. 17 at PageID 130; 19 at PageID 279, 300.) For his part, Call assumed that J.C. had done something wrong and Deputy Thomas was there to arrest him. (Doc. No. 17 at PageID 132-33.) Nevertheless, it is clear that Deputy Thomas attempted to enter Call's home after introducing himself. (Defs. Ex. A, Video, at 1:08-1:15.)

As Deputy Thomas stepped forward, Call blocked his access. (Doc. No. 17 at PageID 131.) Deputy Thomas proceeded to shove Call, causing Call to stumble backward half a step. (Defs. Ex. A, Video, at 1:17-1:20.) Attempting to diffuse the confrontation, J.C. identified himself and agreed to come outside to speak with Deputy Thomas on the porch. (Doc. No. 17 at PageID 132.) J.C. began toward the door, but Call put his arm up against the door frame to block J.C.'s exit. (*Id.* at PageID 167.) Call advised J.C. that he did not have to speak to Deputy Thomas by himself. (*Id.*) Deputy Thomas then gave Call another light shove and Call took his hand off the door frame to let J.C. out onto the porch. (Doc. No. 19 at PageID 280; Defs. Ex. A, Video, at 1:36-1:40.) Deputy Thomas patted down J.C. for weapons and checked to make sure J.C. was not injured. (Defs. Ex. A, Video, at 1:48-2:00.) Call, wearing just his underwear at the time, ran back to his bedroom to get dressed so he could join J.C. and Deputy Thomas outside. (Doc. No. 17 at PageID 169; Defs. Ex. A, Video, at 1:50-1:55.)

Call did not return to the porch for about another thirty-to-forty seconds. (Defs. Ex. A, Video, at 1:50-2:25.) In the meantime, Deputy Thomas spoke with J.C. (*Id.* at 2:00-2:20.) Deputy Fenwick had also arrived and was standing at the bottom of Call's porch steps. (*Id.* at 2:00-2:25.)

When Call did return, he was aggravated—with Deputy Thomas specifically—about how

4

he felt he was treated in the doorway.  (Doc. No. 17 at PageID 136-37.)  Call started loudly demanding the Deputies' supervisor and, with the limited porch space available to him, pointed his index finger at Deputy Thomas.  (Doc. No. 21 at PageID 347; Defs. Ex. A, Video, at 2:34-2:38.)  Deputy Thomas was now focused on trying to explain to Call that he was called to ensure J.C.'s well-being.  (Doc. No. 19 at PageID 284.)  However, Call admittedly tuned out everything Deputy Thomas had to say, as he continued to swear at the Deputies and demand a supervisor.  (Doc. No. 17 at PageID 170.)  Deputy Fenwick instructed Call to join him at the bottom of the porch steps so they could talk in the yard while Deputy Thomas spoke with J.C.  (Doc. No. 21 at PageID 347.)  As Call turned toward the porch steps to comply, he complained about Deputy Thomas to Deputy Fenwick.  (Doc. No. 17 at PageID 139.)  Before Call could take a full step, Deputy Thomas placed Call under arrest, securing him in handcuffs and leading him to the backseat of Deputy Thomas' police cruiser.  (Doc. No. 17 at PageID 141; Defs. Ex. A, Video, at 2:40-3:25.)

   The Deputies' left Call's home after J.C. agreed to go to the hospital for emergency mental health services.  (Doc. No. 28-2 at PageID 487.)  At that time, the Deputies transferred Call to Deputy Fenwick's police cruiser.  (*Id.*)  Deputy Fenwick transported Call to Tri County Jail and booked him on a charge for obstructing official business.  (*Id.*)  Call was in jail for approximately four or five hours before being released on bond.  (Doc. No. 17 at PageID 155.)  The same day, Deputy Thomas filled out a formal criminal complaint and completed a written statement, which were presented to the Champaign County Municipal Court in support of a misdemeanor charge against Call for obstruction of official business, in violation of Ohio Rev. Code § 2921.31(A).  (Doc. Nos. 19 at PageID 312; 28-3 at PageID 488-89.)  Call was arraigned in Champaign County Municipal Court shortly after the incident.  (Doc. No. 17 at PageID 157.)  Local prosecutors later

dropped the obstruction charge against Call on October 25, 2022. (*Id.*)

Call brought the instant Complaint several months later, on January 30, 2023. (Doc. No. 1.) In his Complaint, Call has lodged three counts, but alleged five causes of action. (*See id.* at 11-12.) In his first count, Call has stacked allegations.[3] (*Id.* at PageID 11.) Specifically, in his first count, Call has alleged malicious prosecution and excessive force against Deputy Thomas under 42 U.S.C. § 1983, and he has alleged municipal liability pursuant to § 1983 against the Champaign County Sheriff's Office for maintaining an unconstitutional policy or custom. (*Id.*) In his second count, Call has alleged malicious prosecution, in violation of Ohio law, against Deputy Thomas. (*Id.* at PageID 12.) Finally, in his third count, Call has alleged that Deputy Thomas subjected him to false arrest, in violation of Ohio law. (*Id.*)

Defendants filed their current Motion on September 25, 2024. (Doc. No. 29.) Call filed his response in opposition to the Motion on October 16, 2024 (Doc. No. 34), and Defendants submitted their reply brief on October 30, 2024 (Doc. No. 36). Defendants' Motion is now ripe for review and decision.

II. **STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought" and that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has

---

[3] The Court notes that Call alleging multiple causes of action within a single count likely violates the requirement of Fed. R. Civ. P. 8 that claims be pled in short and plain statements. Notwithstanding, Defendants have not moved for Call to file a more definite statement, and, at any rate, the Court ultimately finds Defendants are entitled to summary judgment on Call's claims as they are pled. Therefore, the Court will disregard Call's stacking of allegations for purposes of the present Motion.

6

the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, affidavits or sworn declarations, and admissions on file, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(a), (c).

The burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In opposing summary judgment, the nonmoving party cannot rest on its pleadings or merely reassert its previous allegations. *Id*. at 248-49. It also is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

A party's failure "to properly address another party's assertion of fact as required by Rule 56(c)" can result in the court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Additionally, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 255. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id*. at

255; *Matsushita*, 475 U.S. at 587; *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id*. The inquiry, therefore, "asks whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict. *Id*.

### III. ANALYSIS

#### A. Preliminary Matters

As an initial matter, the Court must discuss two faults with Call's arguments against summary judgment. First, Call argues that Defendants are not entitled to summary judgment on his claim for false arrest pursuant to federal law. Yet, Call has not pled a federal false arrest claim. In their entirety, Call's federal claims targeted at Deputy Thomas' actions allege:

> By securing Mr. Call's prosecution without probable cause, consciously or recklessly disregarding the elements of his charge, which prosecution ultimately terminated in his favor after he was deprived of liberty, and shoving him when any amount of force would have been excessive, ***Defendant Thomas committed malicious prosecution and excessive use of force*** in violation of the Due Process Clause of the Fourteenth Amendment and the Fourth Amendment incorporated therein.

(Doc. No. 1 at PageID 11 (***emphasis added***).) The Federal Rules of Civil Procedure require that a party pleading a claim state his claim in "a short and plain statement ... showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims …." *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 405 (6th Cir. 1998) (quoting *Mayer v. Mylod*, 988 F.2d 635, 637-38 (6th Cir. 1993)) (internal quotation marks omitted). Here, Call's allegations invoking federal law can only be read to put Defendants on notice of a malicious prosecution claim and a claim for excessive force. The allegations cannot be read to provide notice of a false arrest claim

8

pursuant to federal law. To be sure, Defendants seek summary judgment on all of Call's claims and, even still, Defendants have not argued for summary judgment on a federal false arrest claim in their Motion. Accordingly, because Call has failed to even allege a claim for false arrest under federal law, the Court will disregard his arguments in favor of such a claim here.

Secondly, it seems that Call has abandoned the vast majority of his remaining claims against Defendants. Generally, "a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 F. App'x. 367, 372 (6th Cir. 2013) (citations omitted). Regarding the instant Motion, Call has only argued for the survival of his federal claim for malicious prosecution and an unpled federal claim for false arrest. (*See* Doc. No. 34 at PageID 675-86.) He says nothing of his claims for: excessive force, pursuant to federal law; municipal liability for pursuing an unconstitutional policy or custom, under federal law; malicious prosecution, under Ohio law; or, false arrest, under Ohio law. As such, the Court finds that Call has abandoned these claims.

Even assuming that Call had not abandoned these claims, each would fail as a matter of law. Because Call has presented no evidence for his various abandoned claims, the Court may only consider Defendants' evidence on the issues. Viewing that evidence in Call's favor, the Court finds that the existence of probable cause for Deputy Thomas to arrest Call—explained below with respect to malicious prosecution—and exigent circumstances relating to J.C.'s safety would prove fatal to Call's now-abandoned claims.

Thus, the Court has determined to **GRANT** Defendants' Motion as to Call's federal claims for excessive force and municipal liability, and, as to Call's claims under Ohio state law for malicious prosecution and false arrest.

### B. Malicious Prosecution

9

The Court is then solely left with Call's cause of action against Deputy Thomas, brought pursuant to 42 U.S.C. § 1983, for malicious prosecution.  Defendants argue that Deputy Thomas is entitled to qualified immunity and, therefore, summary judgment on Call's malicious prosecution claim.  (Doc. No. 29 at PageID 623-36.)  In particular, Defendants assert that Deputy Thomas had probable cause to arrest Call on August 17, 2022, and he cannot be liable for Call's prosecution when he did nothing more than turn over truthful materials detailing the arrest to prosecutors.  (*Id.* at PageID 633-34.)  On the other hand, Call posits that Deputy Thomas did not have probable cause to arrest him and the materials handed over to prosecutors in support of probable cause were fabricated.  (Doc. No. 34 at PageID 680-82.)

Once a defendant asserts qualified immunity, "'the ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity.'"  *Palma v. Johns*, 27 F.4th 419, 427 (6th Cir. 2022) (quoting *Estate of Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017)).  A plaintiff may only satisfy this burden by demonstrating that: "(1) the defendant violated a constitutional right; and (2) the right was clearly established."  *Puskas v. Delaware Cnty., Ohio*, 56 F.4th 1088, 1093 (6th Cir. 2023) (quoting *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021)) (internal quotation marks omitted).  If, viewing the facts in the light most favorable to the plaintiff, either of these two prongs cannot be established, the defendant is entitled to qualified immunity. *Mitchell v. Schlabach*, 864 F.3d 416, 420 (6th Cir. 2017) ("Government officials are protected by the doctrine of qualified immunity unless the answer to both questions is yes").

The inquiry into Deputy Thomas' entitlement to qualified immunity begins and ends with considering whether Call has established a constitutional violation in the vein of malicious prosecution.  To make out a constitutional violation for malicious prosecution, a plaintiff must show: "(1) a criminal prosecution was initiated against the plaintiff, and the defendant made,

10

influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor." *King v. Harwood*, 853 F.3d 568, 581 (6th Cir. 2017) (citations and internal quotation marks omitted); *see also Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010). Importantly, however, "a police officer cannot be liable for Fourth Amendment malicious prosecution when he did not make the decision to bring charges, as long as the information he submitted to the prosecutor is truthful." *Wysong v. City of Heath*, 377 F. App'x. 466, 470 (6th Cir. 2010) (quoting *Kinkus v. Vill. of Yorkville, Ohio*, 289 F. App'x. 86, 91 (6th Cir. 2008)) (internal quotation marks omitted).

In this case, the Court finds that Deputy Thomas cannot be liable for Call's prosecution, however short-lived, because he did not play a part in deciding to bring charges, beyond submitting an initial criminal complaint. It is undisputed that Deputy Thomas did not make the decision to prosecute Call for obstruction of official business. However, Call contends that Deputy Thomas deliberately misrepresented his behavior on the morning of August 17, 2022, as deserving of prosecution. (Doc. No. 34 at PageID 681.) This argument is without merit. The Court has reviewed the video footage of the incident (Defs. Ex. A, Video), and, Deputy Thomas' Court Statement (Doc. No. 28-3) and Narrative Supplement (Doc. No. 28-2) accurately reflect the events leading to Call's arrest as depicted in the video. The only perceivable inconsistency in Deputy Thomas' reports is his assertion that Call kept coming toward him just before Deputy Thomas placed Call in handcuffs. (Doc. No. 28-3 at PageID 488-89.) The Court will not find a constitutional violation due to this triviality. In-fact, just prior to his arrest, Call's movements were directed toward Deputy Thomas. (Defs. Ex. A, Video, at 2:34-2:38.) It was only in the split

11

second that Deputy Fenwick spoke to Call that Call turned away from Deputy Thomas. (*Id.* at 2:40.) If anything, Deputy Thomas' account of the August 17 arrest merely omitted a minor inconsequential detail. Hence, the Court finds that Deputy Thomas did not participate in the decision to prosecute Call, as necessary to establish a constitutional violation for malicious prosecution.

What is more, Deputy Thomas possessed probable cause to arrest Call for obstruction of official business on August 17, 2022. Ohio law states that:

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

Ohio Rev. Code § 2921.31(A). An individual committing such an act shall be guilty of obstructing an official act. Ohio Rev. Code § 2921.31(B). At bar, exigent circumstances—J.C.'s imminent threat of self-harm—permitted Deputy Thomas to enter Call's home without a warrant, if need be to ensure J.C.'s safety. *Lawrence v. Bloomfield Twp.*, 313 F. App'x. 743, 747 (6th Cir. 2008) (naming "risk of injury to the officer[] or others that required swift action" as an exigent circumstance) (citation and internal quotation marks omitted). That Call did not know why Deputy Thomas needed to speak with J.C. is irrelevant. Deputy Thomas had probable cause that a teenage boy was in Call's home cutting himself with a knife. When Call blocked Deputy Thomas' entry and, later, J.C.'s exit, Call was interfering with Deputy Thomas' wellness check. Indeed, even if Call assumed that Deputy Thomas was there to arrest J.C., Call's actions were designed to prevent Deputy Thomas from affecting an arrest. Further, in light of the exigent circumstances, Deputy Thomas had probable cause to believe that Call lacked the privilege to so impede the wellness check.

Additionally, Call's behavior when he returned to the porch was arguably obstructive. "Ohio courts have affirmed obstruction convictions premised on true speech only when that speech involved yelling, cursing, aggressive conduct, and/or persistent disruptions after warnings from the police against interrupting the investigation." *Patrizi v. Huff*, 690 F.3d 459, 464 (6th Cir. 2012) (citing *State v. Wellman*, 879 N.E.2d 215, 218 (Ohio Ct. App. 2007)). When he came onto the porch, Call was loudly swearing at Deputy Thomas such that Deputy Thomas was focused on Call rather than J.C. Deputy Thomas attempted to explain his presence to Call, but Call tuned out Deputy Thomas to continue expressing his frustration at the officer. When engaged with Deputy Thomas, whether out of anger or fear for his son, Call behaved in a way that was perceivably intended to prevent Deputy Thomas from conducting a wellness check for J.C.'s benefit. Thus, Call's claim for malicious prosecution also fails due to the existence of probable cause.

In sum, Deputy Thomas is entitled to qualified immunity on Call's malicious prosecution claim because Call has not proven that Deputy Thomas subjected him to a constitutional violation. Therefore, the Court **GRANTS** Defendants' Motion with respect to Call's malicious prosecution claim.

### IV.   CONCLUSION

In accordance with the foregoing, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment (Doc. No. 29) in all respects. Call's Complaint (Doc. No. 1) is hereby **DISMISSED**.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, November 19, 2024.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE